USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/29/22__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
RYAN STANCU,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiff,　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　　　20-CV-10371(ALC)
　　　　　　-against-　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　　　<u>OPINION AND ORDER</u>
NEW YORK CITY/PARKS DEPT,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendant.　　　:
　　　　　　　　　　　　　　　　　　　　　　:
-------------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

　　*Pro se* Plaintiff Ryan Stancu brings this action against Defendant New York City/Parks Dept. ("City," "Parks Department," or "Defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Plaintiff brings claims of employment discrimination due to his religious beliefs, hostile work environment, retaliation, and constructive discharge. Defendant now moves to dismiss the complaint. For the reasons that follow, Defendant's motion is DENIED in part and GRANTED in part.

**FACTUAL BACKGROUND**

　　When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the Complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011). Furthermore, "[a] complaint is deemed to include any written instrument attached to it as an exhibit," *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted); Fed. R. Civ. P. 10(c), and the Court may also consider any documents that the plaintiff refers to in the complaint, documents of which the Court may take judicial notice, and documents upon which the plaintiff relied in bringing suit. *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002). Pursuant to that standard, this recitation of

facts is based on Plaintiff's amended complaint, ECF No. 14 ("Am. Compl."), and those exhibits which were attached the original complaint and which are incorporated by reference in the amended complaint. *See* ECF No. 39.

Plaintiff is a "devout Christian of Eastern Orthodox Christian faith" and wears a beard due to his religious beliefs. ECF No. 39. at 4. He was employed as an Urban Park Ranger with Defendant City of New York's Department of Parks and Recreations ("Parks Department") from November 2018 until May 10, 2020. Am. Compl. ¶ 10. On November 15, 2018, Sergeant O'Neill informed Plaintiff that the Parks Department does not permit employees to have beards, and then "in a belittlingly manner" remarked that "[w]e are not in the Stone Age." *Id*. ¶ 11. Plaintiff responded that he has a beard due to his religious beliefs. *Id*. The next day, O'Neill told Plaintiff to "prove his religious beliefs with a letter from the church." *Id*.

On November 23, 2018, Plaintiff complained to his union about the above interaction. *Id*. ¶ 12. On the same day, he also complained to the Office of the Parks Department Commissioner via telephone about the alleged religious discrimination he experienced. *Id*. The Parks Department representative told Plaintiff that the Parks Department is an equal employment opportunity employer and, as an accommodation, Plaintiff would be permitted to keep his beard and not work on Sundays so that he could attend religious services. *Id*.

Plaintiff continued to experience harassment from O'Neill and other supervisors. O'Neill told Plaintiff "numerous times" that Plaintiff would need to "choose between keeping his job or his beard. *Id*. ¶ 13. He also received "daily harassing questions" about the shape of his beard. *Id*. ¶ 14.

On June 20, 2019, Plaintiff made another complaint by phone to the Commissioner's office. The representative instructed Plaintiff to enter his complaint and religious accommodation

request in writing. *Id*. ¶ 16. On July 30, 2019, Plaintiff sent his written request for religious accommodation to Defendant, asking that he be permitted to maintain his beard and take off on Sundays. *Id*. ¶¶ 17–18. Defendant granted the request to maintain the beard for religious purposes and granted Plaintiff permission to take off one Sunday per month, but not each Sunday. *Id*. ¶ 18.

Subsequently, Plaintiff's supervisors "ramped up their harassments against him, which became a daily routine." *Id*. ¶ 20. For example, between August 15, 2019 and May 10, 2020, a supervisor photographed Plaintiff's beard once a week. *Id*. ¶ 22. While the supervisor informed Plaintiff that he was directed to "keep a profile" of all employees' beards, the supervisor did not take photographs of other employees' beards. *Id*. On January 1, 2020, Plaintiff was informed that he would be transferred to Washington Square Park. *Id*. ¶ 23. Plaintiff alleges that Defendant knew that the Washington Square Park facility housing Plaintiff's locker room and office was "infested with mold, rat poison, and carbon monoxide." *Id*. On January 17, 2020, Plaintiff's first day at Washington Square Park, Plaintiff experienced shortness of breath, dizziness, fatigue, and severe headaches, symptoms that continued for several days. *Id*. ¶ 24. On January 30, 2020, Plaintiff and other co-workers felt ill, and the medical testing established that Plaintiff experienced carbon monoxide poisoning. *Id*. ¶ 25. On February 22, 2020, Plaintiff again experienced carbon monoxide poisoning while in the Washington Square Park facility. *Id*. ¶ 27. Plaintiff alleges that, at the time of filing the amended complaint, he still experienced symptoms caused by the carbon monoxide exposure. *Id*. ¶ 34.

As a result of the retaliation he experienced, including his placement at Washington Square Park, Plaintiff informed supervisors that he would contact then-Mayor Bill de Blasio about the retaliation. *Id*. ¶ 28. On February 28, 2020, they "retaliated swiftly" by fabricating a write-up against Plaintiff for "insubordination." *Id*. Plaintiff alleges that he was threatened with write-ups

throughout his tenure for not issuing "enough citations to the public." *Id*. at 29. When Plaintiff explained that he could not issue citations if there were no violations occurring, the supervisors stated that they "don't care." *Id*.

Plaintiff also claims that Defendant retaliated against him by delaying his promotion to "shielded officer" status for more than two years, while every other officer who graduated the academy with Plaintiff received shielded status. *Id*. ¶ 15. Employees who are not shielded are considered temporary employees who can be fired at any time and who cannot be considered for promotions. *Id*. After Plaintiff made multiple complaints, he was informed by Defendant that "somebody lost the paperwork." *Id*.

On May 10, 2022, a supervisor placed in Plaintiff's locker a note stating "Parks is not your church. Get the fuck out of here. Go to your church and work there." *Id*. ¶ 31. On May 10, 2020, Plaintiff was "forced to resign from his employment" due to Defendant's adverse actions toward Plaintiff. *Id*. at 32.

## PROCEDURAL HISTORY

On June 26, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 39 at 4–5. On September 17, 2020, the EEOC issued Plaintiff a Right to Sue notice. *Id*. at 3. Plaintiff filed this action on December 8, 2020. ECF No 2. On March 30, 2021, Defendant filed a letter requesting a pre-motion conference regarding an anticipated motion to dismiss Plaintiff's complaint. ECF No. 11. In response to the arguments raised in Defendant's pre-motion conference letter, Plaintiff filed an amended complaint on April 14, 2021. On September 10, 2021, Defendant filed this motion. On October 5, 2021, Plaintiff filed an application for the Court to request pro bono counsel, which the Court denied without prejudice. ECF Nos. 27 and 30.

**STANDARD OF REVIEW**

Rule 12(b)(6) allows the court to dismiss a claim if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims should be dismissed when a plaintiff has not pled enough facts that "plausibly give rise to an entitlement to relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, where a plaintiff alleges facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 557 (2007)).

Considering this standard, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). In particular, "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal citations and quotation marks omitted).

**DISCUSSION**

I. **Timeliness of Claims**

As a preliminary matter, the Court addresses Defendant's contention regarding the timeliness of certain allegations.

"[A] Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred.'" *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (quoting 42 U.S.C. § 2000e-5(e)(1)). However, under the "continuing violation" doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 156 (2d Cir. 2012) (internal quotation marks and citations omitted). "A continuing violation may be found where there is proof of specific ongoing discriminatory polic[i]es or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Thus, the continuing violation doctrine applies if "the acts within and without the limitations period are sufficiently similar and frequent to justify a conclusion that both are part of a single discriminatory employment practice chargeable to the employer." *Morris v. Amalgamated Lithographers of America, Local One*, 994 F. Supp. 161, 163 (S.D.N.Y. 1998) (internal quotation marks and citations omitted).

Here, the Court finds that those allegations occurring before the limitations period—before August 31, 2019—are actionable as they are part of the same violation occurring within the limitation period. Plaintiff alleges discriminatory acts similar in kind and carried out by the same supervisors and individuals both before August 31, 2019 and subsequent to that date. For example, much of the discrimination throughout the entire time period of the allegations specifically dealt

6

with Plaintiff's beard and his churchgoing, and Sergeant Candia was involved in carrying out the discriminatory acts both before and after August 31, 2019, including the repeated conduct of photographing Plaintiff's beard. Thus, the Court considers Plaintiff's discrimination claims that occurred before August 31, 2019.

## II. Title VII Discrimination Claim

Title VII "forbids employment discrimination on the basis of 'race, color, religion, sex, or national origin.'" *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 119 (2d Cir. 2008) (quoting 42 § U.S.C. 2000e-2(a)). "Claims of religious discrimination under Title VII . . . can be framed under theories of disparate treatment or the denial of a religious accommodation." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 (S.D.N.Y. 2021). The Court construes the amended complaint to allege both theories.

### A. Disparate Treatment

Disparate treatment claims under Title VII "are subject to the *McDonnell Douglas* burden-shifting standard." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, to state a *prima facie* case of discrimination "a plaintiff must proffer evidence that (1) he belongs to a protected group; (2) he was qualified for his position; (3) his employer took an adverse action against him; and (4) the adverse action occurred in circumstances giving rise to an inference of [religious] discrimination." *Kirkland*, 760 F.3d at 225. Once a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to provide a "legitimate, non-discriminatory reason for its actions." *Id*. If the defendant provides such a justification, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for [religious] discrimination." *Id*.

Here, Defendant only takes issue with the third prong and argues that Plaintiff has not sufficiently alleged an adverse action. The Court disagrees.

The Court construes the complaint as alleging the following adverse actions: (1) the delay in receiving shielded status; (2) his transfer to Washington Square Park; (3) the February 2020 write-up; (4) the threat of write-ups; and (5) his constructive discharge.[1]

The Court declines to find that the February 2020 write-up and the consistent threat of write-ups constitute adverse actions. *See Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 14 (2d Cir. 2019) ("In addition, [the plaintiff]'s disciplinary write ups were not adverse employment actions because they were only notices and did not result in disciplinary action."); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) ("The law in this Circuit is clear that the threat of disciplinary action, without more, does not constitute an adverse employment action.").

The Court does uphold the transfer and delay in shielded status as adverse actions. "An internal transfer can be an adverse employment action if accompanied by a negative change in the terms and conditions of employment." *Terry*, 336 F.3d at 144. The transfer from one location, which posed no health or safety risks to Plaintiff, to Washington Square Park, which repeatedly exposed Plaintiff to the known risk of carbon monoxide poisoning, constitutes a negative change in the conditions of employment. *See Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 440 (E.D.N.Y. 2014) (finding adverse employment action where Plaintiff was transferred to a new location that "was full of 'noxious fumes'").

The Court construes the delay in receiving shielded status as akin to a delay in receiving a promotion. Here, Plaintiff did not receive shielded status while the remainder of his class did. Without this status, Plaintiff was ineligible for promotion. This delay is sufficiently pleaded as an

---

[1] As the Court dismisses Plaintiff's constructive discharge claim and declines to find that Plaintiff plausibly alleged constructive discharge, *see infra*, the Court does not analyze the proposed adverse action of constructive discharge.

8

adverse action. *See Fitchett v. City of New York*, No. 18-CV-8144, 2019 WL 3430726, at *10 (S.D.N.Y. July 30, 2019)(holding that African American plaintiff adequately pleaded an adverse action where his delayed promotion was received "10 months after other, less exemplary, non-African American detectives in his unit had been promoted"); *Guinyard v. City of New York*, 800 F. Supp. 1083, 1088–89 (E.D.N.Y. 1992) ("Even for those who were promoted, an illegal delay in promotion may still result in lost wages, benefits, and other types of injuries.").

At the motion to dismiss stage, the Court finds that Plaintiff has met his *prima facie* burden. As Defendant offered no legitimate, non-discriminatory reason for its actions, Defendant has not met its burden. Therefore, Plaintiff has stated a claim for disparate treatment employment discrimination.

### B. Failure-to-Accommodate

For religious failure-to-accommodate claims, plaintiffs must show that: "[i] they held a bona fide religious belief conflicting with an employment requirement; [ii] they informed their employers of this belief; and [iii] they were disciplined for failure to comply with the conflicting employment requirement." *Handverger v. City of Winooski*, 605 F. App'x 68, 70 (2d Cir. 2015) (internal quotation marks and citations omitted). "Once a *prima facie* case is established by the employee, the employer must offer [him] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Livingston*, 563 F. Supp. 3d at 233 (quoting *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).

Defendant appears to concede that Plaintiff established his *prima facie* case and instead argues that Plaintiff has not plausibly alleged that the received accommodation—authorization to wear a beard and to not work for one Sunday per month—was unreasonable. Namely, Defendant argues that the received accommodation need not be identical to the requested accommodation, in

9

this case, to not work any Sundays, in order to be reasonable. The Court agrees that Defendant need not provide the requested accommodation in order to meet its burden. *See, e.g., Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("[T]he employer need not offer the accommodation the employee prefers."). However, the defendant must still demonstrate that the accommodation was reasonable by showing that the accommodation "eliminate[s] the conflict between the employment requirement and the religious practice." *Baker v. The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006). Here, Plaintiff alleges that he informed Defendant of his opposition to its modified accommodation, and he alleges that he resigned in part due to his inability to take off each Sunday. *See* ECF No. 31 at 12.[2] Thus, Plaintiff alleges that the accommodation did not eliminate the conflict. Defendant has offered no rebuttal demonstrating that the accommodation did eliminate the conflict, or, alternatively, that providing a reasonable accommodation would "cause the employer to suffer an undue hardship." *Cosme*, 287 F.3d at 158. Thus, Defendant has not met its burden and this claim survives the motion to dismiss.

Accordingly, the Court finds that the Plaintiff has stated a claim for employment discrimination under both the disparate treatment and failure-to-accommodate theories.

### III. Retaliation

Retaliation claims under Title VII are also subject to the *McDonnell Douglas* burden-shifting test. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). To state a *prima facie* claim for retaliation under Title VII, a plaintiff must demonstrate that: (1) he participated in a protected activity; (2) the defendant was aware of his protected activity; (3) he suffered an "adverse employment action;" and (4) there is "a causal connection between the

---

[2] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citations omitted).

The Court construes Plaintiff to allege as protected activity (1) his phone call to the Commissioner's office on November 23, 2018; (2) his written request for a religious accommodation on July 30, 2019; and (3) his statement, made between February 20, 2020 and February 28, 2020, that he will contact the mayor about "the entire situation." Employee complaints can qualify as protected activity where "(i) the employee had a good faith, reasonable belief that [he] was opposing an employment practice made unlawful by Title VII, and (ii) the employer understood, or could reasonably have understood, that the [employee's] opposition was directed at conduct prohibited by Title VII." *Livingston* v, 563 F. Supp. 3d at 247 (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14–15 (2d Cir. 2013). In light of the liberal standard afforded to *pro se* Plaintiffs at the motion to dismiss stage and Defendant's lack of objection, the Court finds that each alleged protected activity is sufficiently pleaded.

Plaintiff alleges as adverse actions the same conduct he alleged in his discrimination claim. Here, Defendant does not challenge any of the conduct save for the constructive discharge.[3] Indeed, a Title VII retaliation claim provides for a more expansive understanding of 'adverse action' than a discrimination claim. *See Livingston*, 563 F. Supp. 3d at 247 n.28 ("While the Court found that much of this conduct was not adverse for the purposes of Plaintiff's disparate treatment claims, an 'adverse employment action' in the retaliation context is broader than that for discrimination claims . . . ."); *Davis-Garett* v. *Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) ( "[T]he proper question for a retaliation claim is whether the alleged adverse action to which

---

[3] Again, the Court does not address this adverse action due to the Court's dismissal of the constructive discharge claim.

11

the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." (alterations and internal quotation marks omitted)). Thus, the Court finds that Plaintiff sufficiently pleads as adverse actions: (1) his transfer to Washington Square Park on January 17, 2020; 2) his write-up on February 28, 2020; (3) his resignation on May 10, 2020; (4) the ongoing delay in promoting him to shielded status; (4) the constant threat of write-ups; and (5) the discriminatory comments and conduct he was subject to on a daily basis, including the weekly photographs beginning on August 15, 2019.

Defendant only challenges the fourth prong of the Title VII retaliation standard, the causal connection element of Plaintiff's retaliation claim. Proof of a causal connection for a Title VII retaliation claim requires a plaintiff to show that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Causation may be demonstrated either indirectly, "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct," or directly, "through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

The Court finds that Plaintiff has indirectly proven causation at this stage. First, Plaintiff has proven causation through circumstantial evidence with respect to the delay in receiving shielded status as his peers received the status while he did not. Second, there is sufficient temporal proximity between the protected activity and adverse actions. The Second Circuit "ha[s] not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between [a protected activity] and an allegedly retaliatory activity," *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (internal quotation marks and citations

omitted), and courts have defined ten to twelve months as the outer limit. *See, e.g.*, *Cronin v. St. Lawrence*, No. 08-CV-6346, 2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009) ("The passage of eleven months is, to say the least, at the very outer limit of the amount of time that is considered sufficient to establish causation."); *Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 617 (S.D.N.Y. 2008) ("While the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, the weight of authority supports the view that ten or twelve months is too long." (internal quotation marks and footnote omitted)). While the November 2018 phone call is too attenuated from, for example, the January 2020 transfer, the August 2019 written complaint is sufficiently proximate. In this manner, the spread-out timing of each of the three protected activities serves to provide an indirect causal connection to each adverse action.

Thus, Plaintiff has established his *prima facie* case for retaliation. Defendants' opposition solely focuses on the causation prong of Plaintiff's *prima facie* case, failing to carry its own burden at the next step by not proffering a legitimate reason for the alleged retaliatory acts. Accordingly, the Court denies Defendant's motion to dismiss as to the retaliation claim.

IV.     **Hostile Work Environment**

To establish a hostile work environment . . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work

environment to be abusive." *Id*. (internal quotation marks and citations omitted). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks and citations omitted). While Plaintiff is not required to "present a list of specific acts," he must demonstrate that the instances of hostility were "sufficiently continuous and concerted." *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 240–41 (2d Cir. 2007).

Plaintiff provides detailed allegations of repeated instances of intimidation and ridicule that go beyond a "mere offensive utterance." For example, he alleges that a supervisor left a note in Plaintiff's locker telling him to "get the fuck out of here" and to work at his church instead, that he was asked to "prove his religious beliefs" with a letter from church, that he was made to work in a facility with a known health risk, and that he was told by his supervisors to "choose between keeping his job or his beard," and that "no religion Union crook will change our rules." The Court finds that these allegations sufficiently support Plaintiff's hostile work environment claim and that Plaintiff has stated a claim for hostile work environment.

### V. Constructive Discharge

A plaintiff pleads constructive discharge when an employer, "intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily," rather than directly terminating the employee. *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003). "A claim of constructive discharge has two basic elements: (i) [a] plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign and (ii) a plaintiff must also show that he actually resigned." *Maron v. Legal Aid Soc'y*, --- F.Supp.3d ---, 2022 WL 1910247, at *15 (S.D.N.Y. June 2, 2022).

Plaintiff has failed to allege a constructive discharge claim. While I have permitted Plaintiff's hostile environment claim to proceed, Plaintiff's allegations do not meet the demanding constructive discharge standard. Namely, Plaintiff has failed to demonstrate that he availed himself of alternative options before resorting to resignation. "To bring a constructive discharge claim, an employee must explore other options before quitting." *Forman v. New York City Dep't of Educ.*, No. 19-CV-8156, 2022 WL 912130, at *11 (S.D.N.Y. Mar. 29, 2022); *see also Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) ("An employee who fails to explore alternative avenues offered by her employer before concluding that resignation is the only option cannot make out a claim of constructive discharge." (internal quotation marks and citations omitted)). Thus, courts have denied constructive discharge claims where the plaintiff "could have lodged a complaint" to HR about the intolerable conduct. *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1157 (2d Cir. 1993). Here, Plaintiff has not alleged that he complained to HR, submitted any formal complaints, or requested to be re-transferred before resigning. Therefore, the Court dismisses Plaintiff's constructive discharge claim.

## CONCLUSION

For the forementioned reasons, the Court grants Defendant's motion to dismiss as to the constructive discharge claim and otherwise denies the motion. The parties shall submit a status report to the Court within two weeks of this Order. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 24.

**SO ORDERED.**

**Dated: September 29, 2022**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**